IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL WILLOUGHBY       *
                         *
        v.               *      Civil Case No. RDB-13-0489
                         *
COMMISSIONER, SOCIAL SECURITY  *
                         *

************

# REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2013-06, the above-referenced case was referred to me for review of the parties' cross-motions for summary judgment and to make recommendations pursuant to 28 U.S.C. § 636(b) and Local Rule 301.5(b)(ix). I have considered the parties' cross-motions for summary judgment. [ECF Nos. 14, 17]. This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is necessary. Local R. 105.6 (D. Md. 2011). For the reasons set forth below, I recommend that the Commissioner's motion be granted and that Mr. Willoughby's motion be denied.

Mr. Willoughby applied for Supplemental Security Income on July 8, 2009, alleging a disability onset date of December 1, 2003.[1] (Tr. 133-39). His claim was denied initially on December 30, 1999, and on reconsideration on October 19, 2010. (Tr. 109, 110). An Administrative Law Judge ("ALJ") held a hearing on October 31, 2011, and subsequently denied benefits to Mr. Willoughby in a written opinion dated February 23, 2012. (Tr. 11-29, 61-106). The Appeals Council denied review, (Tr. 1-6), making the ALJ's decision the final, reviewable

---

[1] The record shows that Mr. Willoughby had filed a prior claim for benefits, which was also denied after a hearing in 2008. (Tr. 147).

decision of the agency.

The ALJ found that, during the relevant time frame, Mr. Willoughby suffered from the severe impairments of blindness in the left eye, diabetes mellitus, osteoarthritis, and major depressive disorder/depression. (Tr. 16). Despite these impairments, the ALJ determined that Mr. Willoughby retained the residual functional capacity ("RFC") to:

> [P]erform light work as defined in 20 CRF 416.967(b) except he is limited to standing/walking for two hours and sitting for six hours each in an eight hour day. There are no limitations pushing/pulling or reaching. He is precluded from climbing ladders, ropes, or scaffolds, and is limited to no more than occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. The claimant has limited depth perception. He is limited to routine repetitive simple tasks within a basic routine with little supervision.

(Tr. 19). After considering testimony from a vocational expert ("VE"), the ALJ determined that there were jobs existing in significant numbers in the national economy that Mr. Willoughby could perform, and that he was not therefore disabled. (Tr. 23-24).

Mr. Willoughby disagrees. He asserts three primary arguments in support of his appeal: (1) that the ALJ erroneously determined his RFC; (2) that the ALJ assigned insufficient weight to the opinions of his four treating physicians; and (3) that the testimony from the VE was invalid. Because each argument lacks merit, I recommend that the ALJ's opinion be affirmed.

Mr. Willoughby's first argument is that the ALJ erroneously determined his RFC. The argument has two subparts. First, he contends that the limitations found by the ALJ actually supported an RFC for sedentary, not light, work. In fact, however, while Mr. Willoughby's sitting and standing capacity, as found by the ALJ, did not match the traditional requirement for light work,[2] Mr. Willoughby's other capabilities suggested that he could perform light work. *See* SSR 83-10, 1983 WL 31251, at *5 ("The regulations define light work as lifting no more than 20

---

[2] According to the regulations, light work typically requires "a good deal of walking or standing." 20 C.F.R. § 404.1567 (b).

pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."). The restriction to approximately two hours of standing or walking rendered Mr. Willoughby capable not only of sedentary work, but of a reduced range of light work that would permit him to sit for the majority of the workday. *See, e.g., Hence v. Astrue,* No. 4:12-cv-1, 2012 WL 6691573, at *8 (E.D. Va. Nov. 30, 2012) ("[A]n RFC limiting standing or walking to about two hours does not mandate a finding that Hence could *only* perform sedentary work."); *see also* 20 C.F.R. § 404.1567(b) (noting that a job can be light work "when it involves sitting most of the time with some pushing and pulling of arm or leg controls."). As the VE testified, there are light jobs allowing a worker to sit or stand at will. (Tr. 102-03). Although Mr. Willoughby submits that Medical-Vocational Rule 201.09 mandates a finding of disability because he is over fifty years of age and is only able to perform sedentary work, as noted above, his ability to perform a reduced range of light work places him outside the purview of that Rule.

In the second subpart to his RFC argument, Mr. Willoughby contends that the RFC was deficient because the ALJ made inadequate findings regarding his mental capacity. Pl. Mot. 25. In fact, the RFC contains a restriction to address Mr. Willoughby's mental impairment, specifically the limitation "to routine repetitive simple tasks within a basic routine with little supervision." (Tr. 19). *Cf. Fisher v. Barnhart*, 181 F. App'x 359, 364 (4th Cir. 2006) (finding an RFC limited to work that required little or no judgment and simple duties adequately accounted for a plaintiff's low IQ test scores, poor concentration, deficient memory, and difficulties handling instructions); *Bentley v. Chater*, No. 96–1782, 1997 U.S. App. LEXIS 10559, 1997 WL 232303, at *1 (4th Cir. 1997) (upholding an RFC that accounted for a plaintiff's limited concentration, persistence and pace with a limitation to "work of a simple, routine and repetitive nature"). Moreover, the ALJ's RFC analysis included a summary of treatment and evaluation

records relating to Mr. Willoughby's mental functioning and his ability to maintain personal relationships, and noted the probative weight afforded to the December 2009 report from the consultative examiner. (Tr. 21-22). That analysis suffices to fulfill the ALJ's duty to consider all of the evidence of record and to determine a claimant's RFC.

Mr. Willoughby's next argument is that the ALJ erred by not assigning controlling weight to the opinions of four treating sources: Drs. Wonodi, Osuala, Willis, and Doyle. Pl. Mot. 26-28. However, a treating physician's opinion is not entitled to controlling weight if it is inconsistent with the other substantial evidence of record. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Applying that standard, the ALJ expressly and appropriately evaluated the opinions of each of the four physicians in question.[3] (Tr. 18-19) (Dr. Wonodi); (Tr. 21-22) (Dr. Osuala); (Tr. 20-21) (Dr. Willis); (Tr. 21) (Dr. Doyle).

Dr. Wonodi, a mental health practitioner, completed a form saying that he had last treated Mr. Willoughby on June 22, 2011. (Tr. 346-48). He did not identify the length of treatment relationship or the number of sessions, and no treatment notes from Dr. Wonodi appear to be contained in the file. *See* 20 CFR § 404.1527(c)(2)(i) ("When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source."). Dr. Wonodi diagnosed major depressive disorder, and opined that Mr. Willoughby would be unable to work, citing marked restriction in activities of daily living, marked restrictions in maintaining social functioning, marked restrictions in maintaining concentration, persistence, or pace, and repeated episodes of decompensation. (Tr. 347-48). In contrast, after a

---

[3] In the ALJ's opinion, Dr. Willis is called "Hollis Seunarine, M.D." (Tr. 20-21). Although the opinion in question is signed "Willis," the stamped name and address of the practice lists Dr. Seunarine, which appears to have caused the confusion on the part of the ALJ. (Tr. 386).

4

comprehensive review of the medical evidence of record, including the consultative examinations by Dr. Anderson and Dr. Malik, the ALJ found only mild restriction in activities of daily living, moderate difficulties in social functioning and concentration, persistence, and pace, and no episodes of decompensation. (Tr. 18-19). In light of the apparently brief treating relationship and the inconsistency between Dr. Wonodi's opinion and the other substantial evidence of record, the ALJ correctly did not afford Dr. Wonodi's opinion controlling weight.

Dr. Osuala also appears to have treated Mr. Willoughby for a very brief time. The notes from Dr. Osuala's initial evaluation on March 17, 2010 show that Mr. Willoughby had a normal level of physical activity, a logical thought process, fair attention and concentration, good memory, and good judgment and insight. (Tr. 289-92). Because there are no additional treatment notes evident in the file, it is unclear whether Dr. Osuala evaluated Mr. Willoughby any further prior to issuing an opinion less than a month later, on April 14, 2010. (Tr. 336-39). The opinion indicated that Mr. Willoughby would be unable to maintain the mental alertness, concentration, and persistence necessary to carry out simple job duties, and could not maintain appropriate interpersonal relations with co-workers and supervisors. *Id.* As noted above, the ALJ performed a comprehensive review of the medical evidence of record, and found that Mr. Willoughby suffered from only moderate difficulties in social functioning and concentration, persistence, or pace. (Tr. 18-19). Because the ALJ's conclusion is supported by substantial evidence of record, including the treatment notes from Dr. Osuala's own March, 2010 evaluation of Mr. Willoughby, the ALJ's decision not to assign controlling weight to Dr. Osuala's April, 2010 opinion was proper.

Likewise, Dr. Willis appears to have had a limited treatment relationship with Mr. Willoughby. Although Mr. Willoughby asserts that "Dr. Willis has treated the Plaintiff since

June 1, 2007," in fact his medical records indicate that he was treated by a variety of physicians at Jai Medical Center during that time. *See, e.g.,* (Tr. 206) (noting in June, 2007 that Mr. Willoughby's primary care physician was "Carr"); (Tr. 296) (addressing 2010 report to "Pamela Aung, MD"), (Tr. 362) (indicating "Aung" as primary care physician). The earliest date on any form indicating Dr. Willis as Mr. Willoughby's primary care provider is May 6, 2011, which is shortly before the "date patient last seen" of July 7, 2011 indicated on Dr. Willis's opinion form. (Tr. 384-86). The absence of a longstanding treatment relationship is bolstered by the fact that Dr. Willis noted that he/she was "not sure" if Mr. Willoughby's description of his symptoms and limitations was credible. *Id.* Under clinical signs and symptoms, Dr. Willis cites dizziness and alcohol intake. (Tr. 384). That "fall risk," in addition to a "right knee injury," formed the basis of Dr. Willis's opinion that Mr. Willoughby could neither remain on his feet for two hours in a workday or lift objects weighing up to 10 pounds.[4] (Tr. 385). The opinion form further noted, several times, that Dr. Willis believed Mr. Willoughby needed a psychiatric evaluation and a trip to the emergency room for testing relating to a head injury. (Tr. 384, 386). The treatment notes from Dr. Willis and physicians at Jai Medical Center contain almost no mention of the alleged "fall risk" that formed the sole basis for Dr. Willis's restrictions. (Tr. 363-68). Finally, as the ALJ noted, the December 2009 residual functional capacity assessment from Dr. Rudin, (Tr. 271-78), undermines Dr. Willis's opinion regarding Mr. Willoughby's restrictions, and the later clinical evidence does not substantiate the additional limitations. (Tr. 20-21).

The fourth cited treating physician, Dr. Doyle, is an ophthalmologist who treated Mr.

---

[4] It is worth noting that the radiology services ordered by Dr. Willis on July 7, 2011 resulted in a finding of a normal left knee and some flattening of the patellar arch and a plantar spur in both the left and right feet. (Tr. 369). The right knee was not studied, which seems inconsistent with Dr. Willis's reference to "right knee injury" as a basis for the alleged limitations. The only X-ray of the right knee was ordered by Dr. Carr in April, 2008, and resulted in a finding that, "the joint spaces are maintained with minimal narrowing of the medial and lateral compartments." (Tr. 212).

Willoughby for approximately ten months as of the time of his report. (Tr. 331-33). The diagnoses listed on Dr. Doyle's opinion form, therefore, are ophthalmologic impairments including legal blindness in the left eye and glaucoma. (Tr. 331). However, the questions Dr. Doyle addresses in the check-the-box opinion form, regarding Mr. Willoughby's ability to work, cite medical impairments having nothing to do with ophthalmology or vision. For example, Dr. Doyle opines that Mr. Willoughby cannot sit for prolonged periods of time because of his back, and cannot remain on his feet for a significant period of time due to foot surgery. (Tr. 332). None of the employment-prohibitive opinions from Dr. Doyle appear related in any way to Mr. Willoughby's visual impairments. Moreover, the ALJ expressly addressed Dr. Doyle's opinion and rejected his assessment of Mr. Willoughby's ability to stand or sit, citing contrary medical evidence. (Tr. 21). The ALJ therefore fulfilled his duty of explanation as to Dr. Doyle's form, and was not required to assign it controlling weight.

Finally, Mr. Willoughby contends that the VE's testimony did not comport with the hypothetical the ALJ posed or with the Dictionary of Occupational Titles ("DOT"). Pl. Mot. 29-30. Specifically, Mr. Willoughby asserts that the VE identified "light" jobs in response to a hypothetical presenting "sedentary" restrictions.[5] As addressed above, the hypothetical and the RFC in fact allowed a reduced range of light work, and was not restricted to sedentary. Second,

---

[5] The hypothetical presented to the VE was:

> Assume we have an individual same age, education, past work experience as the claimant . . . who would be able to lift 20 pounds occasionally, 10 pounds frequently. Stand and walk at least two hours in an eight-hour work day. Sit about six hours. Unlimited pushing and pulling. Posturals are all occasional except for never climbing ladders, ropes, or scaffolds. No limitation on manipulative. Would have problems with depth perception, since he has no vision in the left eye . . . limit the individual to routine, repetitive, simple tasks within a basic routine, with little supervision. Any jobs such an individual could perform?

(Tr. 101-02). It corresponded precisely with the RFC determined by the ALJ.

Mr. Willoughby protests the VE's inclusion of a "sit/stand option at will" in considering available positions. Pl. Mot. 29. In fact, the VE modified the hypothetical to permit the individual to sit or stand at will in order to accommodate the reduced sitting and standing capacity presented by the ALJ. The VE had available information for jobs allowing the worker to choose between sitting and standing, but not information for jobs specifically requiring the worker to stand for up to two hours and sit for six hours. Because a worker who was allowed to sit or stand at his discretion could opt to stand for two hours and sit for six hours, the VE's response was fully consistent with the hypothetical posed. Finally, Mr. Willoughby contends that the VE's testimony was inconsistent with the DOT. In fact, the VE clearly testified that he had adjusted the numbers of available positions from the DOT to incorporate the sit/stand option, which is not covered in the DOT. (Tr. 102-03). Accordingly, the VE's testimony was appropriate, and remand is unwarranted.

CONCLUSION

For the reasons set forth above, I respectfully recommend that:

1. the Court GRANT Defendant's Motion for Summary Judgment, [ECF No. 17]; and
2. the Court DENY Plaintiff's Motion for Summary Judgment, [ECF No. 14], and CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.

Dated: October 2, 2013  /s/
Stephanie A. Gallagher
United States Magistrate Judge